UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FIFTH DIVISION

---

| | |
|---|---|
| HOLLY MATHERS, SUE GUNDY, ROSE SEELEN and DIANE THIEL, on behalf of themselves and all others similarly situated, | Court File No. 99-1938 MJD/RLE |
| Plaintiffs, | |
| v. | |
| NORTHSHORE MINING CO., a Delaware corporation. | |
| Defendant. | |

---

**ORDER FOR FINAL APPROVAL OF CLASS SETTLEMENT**

---

This matter came before the court for hearing on February 17, 2006, at Minneapolis, Minnesota, on the parties' joint request for final approval of the settlement of class claims. The class consists of all hourly and non-exempt female employees employed by Northshore Mining Company between April 24, 1998 and September 29, 2005, as certified by order of this court entered September 15, 2003, who have been, are being or will be discriminated against with regard to the terms and conditions of their employment because of gender (the "class"). The plaintiffs appeared by Class Counsel, Joseph J. Mihalek of Fryberger,

1

Buchanan, Smith & Frederick, P.A., Duluth, Minnesota, and one of the class representatives, Holly Mathers. Defendant appeared by attorney Kathleen S. Bray of Hanft Fride, P.A., Duluth, Minnesota. There were no other appearances. The Court, having reviewed and carefully considered the parties' Settlement Agreement, the Affidavit of Class Counsel and Claims Administrator in Support of Final Approval of Settlement and the entire record herein, enters the following ORDER:

1.      The parties previously have fully advised the court of the terms of the Settlement Agreement and the controlling legal authority, and have requested that the court find that the settlement is reasonable, adequate, fair and consistent with relevant state and federal law so as to warrant notice to members of the class and a full fairness hearing. The Court accepted the parties' joint recommendation, granted preliminary approval of the proposed class settlement and ordered notice of the proposed class settlement to be given to all members of the class, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

2.      Notice of the proposed class settlement was duly given to all forty-two members of the class, as directed by the court. The time for class members to opt out of the class or to object to the proposed class settlement has passed and

no class member has filed a request to opt out nor has any class member filed or submitted to Class Counsel or the court any objection whatsoever to the class settlement.  No one appeared at the hearing in opposition to the class settlement.

      3.      The settlement agreement created three subclasses of class members. Under the terms of the settlement, members of Groups 1 and 2 were entitled to a pro rata share of the funds allocated to that Group without the need to file a formal claim.  These classes were allocated automatic shares and a large portion of the overall settlement due to the evidence adduced during discovery that members of these subclasses were more likely to encounter alleged gender discrimination on a regular basis than members of Group 3.  The court finds that the creation of subclasses and differing settlement funds being allocated to the separate subclasses is fair and reasonable.

      4.      Members of Group 3 were required to file a claim to be eligible to request a share of the funds allocated to Group 3.  The Claims Administrator has advised the court of the timely claims received by members of Group 3, the process followed in reviewing those claims and the allocations made by the claims administrator.  The court finds the allocation of Group 3 funds to be fair and reasonable.

5. All class members were eligible to submit formal claims to request a share of the funds allocated for emotional distress damages. The Claims Administrator has advised the court of the timely claims received by class members seeking a share of the emotional distress damages fund, the process followed in reviewing those claims and the allocations made by the claims administrator. The court finds the allocation of the emotional distress damages fund to be fair and reasonable.

6. The settlement agreement and notice to the class provided that fees of Class Counsel related to the administration of the claims for Group 3 and emotional distress damages funds shall be paid from those funds. Total fees for claims administration were $820 for Group 3 and $3000 for the emotional distress damages fund. No objections have been lodged to the fee request. The court finds the total fees of $3820 for claims administration to be fair and reasonable and they are approved.

7. The settlement agreement provides for payment of $240,000 in attorneys fees to Class Counsel for legal services provided on behalf of the class through the date of the final fairness hearing. This fee is based upon the usual

and customary hourly rates of Class Counsel and does not include any lodestar multiplier. The total fee is 18.755 percent of the total settlement of $1,300,000. The court finds that Class Counsel undertook a significant financial risk in representing the class, that the legal services provided to the class were professional and commendable and that the requested fee is fair and reasonable and is approved.

8.	The settlement agreement provides for payment of $237,000 to Class Counsel as reimbursement for costs and disbursements incurred in providing legal services on behalf of the class through the date of the final fairness hearing. A substantial portion of the costs related to expert witness fees incurred to review corporate documents and prepare complex statistical analysis of promotion, training and overtime data. This amount represents less than Class Counsel's actual costs and disbursements through the date of the final fairness hearing. The court finds the request for reimbursement of costs and disbursements to be fair and reasonable and it is approved.

9.	After payment of attorneys fees and costs, there remains for distribution to class members the sum of $819,820, or 63 percent of the total amount of the settlement. There are 33 class members of the total of 42 class

members who are eligible for a cash payment from the settlement, according to the criteria set forth in the settlement agreement and preliminarily approved by this court on November 7, 2005.  Those funds have been allocated to the 33 class members in amounts ranging from $1,500 to $247,500, which amounts are found to be fair and reasonable in light of the evidence and the criteria.  In the absence of any objections to the allocation of funds, the allocation is approved.

10. Class members participating in the settlement shall, within six months from the date of this order, execute and deliver to class counsel the required release of claims and cash checks issued to them for their share of the settlement proceeds or they shall be deemed to have fully and forever waived their interest in the settlement proceeds.   No checks issued by NSM shall be delivered by class counsel to any class member until the class member has executed and delivered the required release of claims.  Any class member who fails to sign the required release within six months of the date of this order shall be deemed to have waived her right to receive settlement proceeds and her portion of the settlement proceeds shall be deemed unclaimed funds.        11. NSM shall report to class counsel six months after the date of issuance of the checks the names and addresses of each class member who signed the required release but failed to cash the settlement check issued to her.  Class

counsel shall then contact each class member who has not cashed her check to determine why the class member did not cash her check.  In the event the check was not cashed because it was lost, stolen, misplaced or for other good cause, class counsel shall report the same to NSM and NSM shall stop payment on the original check and issue a replacement check, less any bank charge for stopping the original check, with written instructions that the replacement check must be cashed within sixty days.  Failure of the class member to cash the replacement check within sixty days shall be deemed a waiver of the right to receive settlement proceeds and the portion of the settlement proceeds represented by the uncashed replacement check shall be deemed unclaimed funds.  In the event the initial check was not cashed because the class member elected not to receive or accept the funds, class counsel shall confirm the class member's refusal of the funds by letter to the class member and a copy to NSM's counsel.  The letter shall be sent by certified mail and shall advise the class member that unless the class member petitions the court within thirty days of the date of the confirmation letter for alternate relief, the class member will be deemed to have waived all rights to receipt of the funds and her share of the settlement funds shall be deemed unclaimed funds.

12.     Unless otherwise ordered by the court, unclaimed funds, together with interest on them at the rate of four percent per year from September 29, 2005 to the date of this order, less any bank charge imposed for the stop payment orders, shall be distributed to the remaining eligible class members on a pro-rata basis according to each class member's percentage of the total funds initially allocated to all class members, but excluding the amount allocated to those class members who did not claim their share of the settlement proceeds in the manner required by paragraphs 10 and 11 of this order.  The re-allocation of the unclaimed funds shall be calculated by the claims administrator, who shall notify NSM of the allocation.  NSM shall then have ten days to issue checks payable to the remaining class members.  The new checks shall be delivered to class counsel for distribution to the remaining class members.

13.     Failure of a class member to execute and deliver the required release or to cash the checks issued to her as her share of the settlement proceeds shall not in any way constitute an exclusion of that class member from the settlement class or exempt her from the binding effect of the settlement agreement and release.

14.     Pursuant to the terms of the settlement agreement, defendant shall issue payments within seven (7) days from the date of this order, together with accrued interest at the rate of four (4) percent per year from September 29, 2005, to be delivered to Class Counsel for release to the class member upon the class member's execution of the release of all claims as specified in the settlement agreement.

15.     Defendant shall no later than sixty (60) days after this order implement and comply with the following injunctive provisions of the settlement agreement:

### 1.     **Appointment of Anti-Discrimination Officer**

Northshore Mining Company agrees to designate an Anti-Discrimination Officer, initially determined to be Carl Kerschen, Area Manager for Human Resources at Northshore Mining Company.  The designated Anti-Discrimination Officer shall be responsible for investigating any and all complaints concerning gender discrimination.  Any time a female non-exempt or hourly employee is denied a promotion, the Anti-Discrimination Officer shall investigate the reasons why that denial occurred and compare that promotion decision with promotion decisions affecting males in the same or similar position within the prior two-year period.  A written analysis will be prepared and shared with the female employee

presenting the complaint, thereby explaining the basis for the promotion denial and comparing the rationale for the promotion decision with rationale for the promotion decisions affecting male employees.  Any comparative analysis of other employees shall be shared with the affected female employee in an anonymous manner, to protect the privacy and confidentiality of personnel data.

### 2. Requests for Promotions

Employees shall be allowed to request a promotion at any time, subject to satisfying time-in-position requirements.  Consideration for promotion will not be dependent upon a supervisor authorizing the Request for Promotion.

### 3. Appeals Concerning Promotions Decisions

Should there be a dispute concerning a promotion, an appeal through Northshore Mining Company's FAIR appeals process will be allowed.  In addition to the current procedures in place for appeals through the FAIR process, Northshore Mining Company will allow employees to appeal the denial of a promotion to an impartial arbitrator, rather than a team of their peers or the General Manager.

The arbitrator shall be selected through the current process utilized through the FAIR appeal on other matters, with a panel of five arbitrators provided by the Bureau of Mediation Services or the American Arbitration Association, Minnesota-only labor and employment panels, and the parties alternately striking from the

list.  The arbitrator's fees and costs of the arbitration process shall be borne by Northshore Mining Company, with only a $300.00 application fee paid by the Employee if this arbitration option is pursued on appeal.  The arbitrator shall review the employer's reasons for denial of the promotion and the employee's case for obtaining the promotion.  The arbitrator shall be vested with the authority to grant the promotion or affirm the denial of the promotion based on substantive reasons, rather than only having authority to determine if proper procedures were or were not followed.

If the employee chooses to have the promotion appeal heard by a team of the employee's peers, as authorized under the current FAIR appeals process, the employee shall be allowed to review all of the employees' and management representatives' names that are placed in the hat or pool for random selection to the FAIR board, to confirm that all eligible FAIR board members have been part of the random selection process.

### 4. Training and Job Assignments Policies and Procedures in the Mine Operations Department

The parties desire to modify policies and procedures so as to provide equitable access to training and job assignment opportunities to enable all female employees to satisfy all promotion requirements by the date on which they satisfy the time-in-position requirements for promotion.  Determining what is equitable access shall require consideration of the employee's training and job assignment

history, promotion status and needs, equipment availability and the Company's legitimate business needs and demands, all of which contribute to the opportunities available at any given time.

Four training coordinators will work with the crews of HBY-classified employees in the Mine Operations department on rotating shifts, and continue to work with all such HBY-classified employees on best practices skills for equipment operation.  The crew coordinators will communicate and reinforce best practice operation of equipment.  The crew coordinators will also use the Modular Mining System to track operator performance on equipment, which allows for assessment of each operator's skill level on different pieces of equipment, thereby providing a consistent, objective mechanism for communicating areas of improvement to each operator.  The crew coordinators will continue to work with the training coordinators and trainers to develop operating skills consistent with best practices.

Northshore Mining Company agrees to schedule quarterly meetings that will involve the Area Mine Manager, Crew Coordinators, Training Coordinators, and a Human Resources Representative.  These meetings will review the data generated by the Modular Mining System, involve coordinated communications among all crews regarding best practices and training issues, and review and monitor employee fulfillment of Technician promotion requirements, which

includes a review of distribution of assignments and training.  The quarterly reports concerning training and best practices will be communicated to the operating crews at one of the following monthly safety meetings.

The training coordinators will monitor promotions for crew members, and monitor training needs to qualify employees for promotions.  At the time of the quarterly meeting, if a Technician is eligible for consideration for promotion to the next Tech level within the next 90 days, with eligibility determined by the minimum time-in-level requirement, the quarterly meeting group members will review any deficiencies in the employee's status, and identify any areas still unsatisfied to qualify for promotion to the next Tech level.  The group will also identify and evaluate reasons for any delays in enabling employees to satisfy all deficiencies affecting promotion.  These promotion status reports will be communicated to the individual employees.

Any employee who believes he or she has not been provided equitable opportunity in training, assignments or promotions may file a complaint with the Anti-Discrimination Officer or through the FAIR appeals process.

### 5.    "Catch-Up" Promotions

All HBY-classified Class Members who were denied promotion to the last HBY-classified position to which they requested a promotion will be promoted to that position effective not more than thirty (30) days after the Final Approval

Date, or upon return to active employment if currently on leave, whichever comes later, so long as the employee maintains employee status with Northshore Mining Company.  The new pay rate associated with the promotion will be effective as of the date of the employee's promotion.  This "catch up promotion" will not apply to any employee who is separated from employment from Northshore Mining Company and terminates her employment status before returning from a current leave.

### 6. Changes Consistent with Business Necessity

Northshore Mining Company may, if required by legitimate business necessity, make future changes in training, assignments and promotion policies and procedures, provided such changes are consistent with the spirit and objectives of this Agreement and provided any such changes made on or before eighteen months after the Final Approval Date do not conflict with the express terms of this Agreement.

16.   Defendant shall provide to Class Counsel four written reports, one at six months and one at twelve months after the date of this order, and then again on the second and third anniversaries of this order detailing the steps taken to implement the injunctive terms of this order, detailing all employment action taken during the reporting period and analyzing the impact of the employment

action on female and male employees.  The reports shall be sufficiently detailed to enable Class Counsel to verify that the terms of this order have been fully implemented and are being followed by defendant.

17.     The settlement is, after hearing, determined to be fair, reasonable, and in the best interests of the class.  The terms of the settlement agreement are, therefore, approved.  By entry of this order, this action will be dismissed with prejudice; however, as required by the terms of the settlement agreement, the court retains jurisdiction for a period of one year and thirty days from the date of this order for the purpose of entering any further orders that may be necessary to implement and enforce the terms of the settlement agreement.  Any class member may hereafter petition the court for enforcement of the terms of this order and the underlying settlement agreement.

IT IS SO ORDERED.

Dated at Minneapolis, Minnesota, this 21st day of February, 2006.

BY THE COURT:

Michael J. Davis
Honorable Michael J. Davis
United States District Judge